IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-254

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| $297,638.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

On October 4, 2016, the United States of America filed this civil action in rem seeking the forfeiture of $297,683.00 in U.S. currency under 18 U.S.C. § 981(a)(1)(C) [D.E. 1]. On December 11, 2017, the United States moved to amend the pleadings to add a claim for forfeiture under 18 U.S.C. § 1955(d) [D.E. 16], moved for summary judgment [D.E. 17], and filed a memorandum in support [D.E. 18]. On December 29, 2017, claimant Charles Smith ("Smith" or "Claimant") cross-moved for summary judgment [D.E. 23] and filed a memorandum in support [D.E. 24]. Thereafter, both parties responded and replied. As explained below, the court grants the United States's motion to amend the pleadings and denies the motions for summary judgment.

I.

In June 2015, law enforcement authorities received numerous complaints that Smith was operating an illegal gambling business at his residence in Trenton, North Carolina. See [D.E. 20-1] 8. Undercover agents visited Smith's residence on numerous occasions and found approximately 40 video gaming machines ("VGMs") and individuals playing the VGMs. See id. at 8–9. On December 22, 2015, Special Agent Greg Murphy obtained a search warrant to search Smith's

residence and to seize any slot machines and related documents or currency. See id. at 11–12. During the search, agents seized $297,638.00 in U.S. currency, 40 VGMs, and 1 ATM machine. See id. at 13. The $297,638.00 in U.S. currency is the subject of this dispute and was found in a plastic pickle barrel in Smith's backyard. See id.

II.

A party generally may amend its complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1). Further amendments are allowed "only with the opposing party's written consent or the court's leave," although "[t]he court should freely give leave when justice so requires." Id. 15(a)(2). Leave should not be granted when the amendment "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); see Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439 (4th Cir. 2011). Once a district court has issued a scheduling order, however, the scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4).

"[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); see Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *8 (E.D.N.C. Sept. 28, 2011) (unpublished); Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., No. 5:06-CV-160-D, 2011 WL 1262159, at *1–2 (E.D.N.C. Mar. 31, 2011) (unpublished), aff'd, 477 F. App'x 981 (4th Cir. 2012) (per curiam) (unpublished). "If the party fails to establish 'good cause' under Rule 16, a trial court may deny the motion to amend and need not conduct the inquiry under Rule 15." Hexion Specialty Chems., Inc., 2011 WL 4527382, at *8. Federal Rule of Civil Procedure 16's "good cause" standard turns on "the timeliness of the

2

amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cty., 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam) (unpublished); see Nourison Rug Corp., 535 F.3d at 298; Hexion Specialty Chems., Inc., 2011 WL 4527382, at *8; Farrar & Farrar Dairy, Inc., 2011 WL 1262159, at *2. Establishing good cause requires the moving party to show that the party could not reasonably have met the deadline despite the party's diligence. See, e.g., Cook v. Howard, 484 F. App'x 805, 815 (4th Cir. 2012) (per curiam) (unpublished); United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007).

The United States originally sought forfeiture under 18 U.S.C. § 981(a)(1)(C) believing that the currency was derived from proceeds traceable to a violation of 18 U.S.C. § 1955, a "specified unlawful activity." See [D.E. 18] 1–2. During discovery, Smith contended that the currency came from the sale of his tire business to Charlie Gray. See [D.E. 20-2] 5. Smith stated that

> Gray paid $2,000 down, then $2000/month for 10 years, then a final payment of $60,000, for a total sale price of $300,000 for the business. [Smith] deposited the payments he received in his BB&T account and then withdrew the total amount in May 2014 in the form of cashier checks, which he then cashed and stored the cash in the barrel from which it was seized.

Id. At the time of Smith's withdrawal, the BB&T account contained $215,844.14. See [D.E. 20-3] 22. On October 26, 2017, the United States deposed Smith and learned additional information concerning the currency. Specifically, Smith admitted that he earned approximately $81,793.85 from the VGMs. See id. at 46–48. Moreover, Smith admitted that he stored the gambling proceeds with the money withdrawn from his BB&T account. See id. at 74–75. The United States moves to amend the pleadings to include a claim that the $297,638.00 in currency is forfeitable under 18 § U.S.C. 1955(d) because it was "used in" the illegal gambling business. See [D.E. 18] 16; 18 U.S.C. 1955(d).

As for Rule 16(b), the United States has demonstrated "good cause" for the amendment. The

3

United States acted diligently and could not have discovered the extent to which Smith commingled his funds without Smith's sworn deposition testimony. No other party involved in the case knew that Smith had $297,638.00 in the pickle barrel or that he withdrew money from the barrel to make pay-outs to customers. See [D.E. 19] 7. There also is no reason to believe the United States should have known this information before deposing Smith. See, e.g., Franklin Livestock, Inc. v. Boehringer Ingelheim Vetmedica, Inc., No. 5:15-CV-00063-BO, 2016 WL 7613690, at *2 (E.D.N.C. Sept. 23, 2016) (unpublished). Moreover, the United States timely moved for leave to amend after discovering this information. Thus, the United States has shown "good cause." See, e.g., Carolina Coupon Clearing, Inc. v. Cardinal Health Managed Care Servs., LLC, No.1:16CV412, 2017 WL 5634903, at *2 (M.D.N.C. June 9, 2017) (unpublished); Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 289 F.R.D. 401, 404 (S.D.N.Y. 2013); Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., No. 5:06–CV–160–D, 2007 WL 4118519, at *6 (E.D.N.C. Nov. 16, 2007) (unpublished); Burton v. United States, 199 F.R.D. 194, 197–98 (S.D. W. Va. 2001). As for Rule 15(a)(2), Smith would not be prejudiced by the amendment because "[t]he relevant facts alleged remain substantially the same." Green v. Baltimore City Police Dep't, No. WMN–10–3216, 2011 WL 335868, at *1 (D. Md. Jan. 31, 2011) (unpublished). Furthermore, the United States did not act in bad faith and the amendment would not be futile. Accordingly, the court grants the motion to amend.

III.

This court reviews the parties' cross-motions for summary judgment under the familiar standard of Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, a "mere . . . scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

A.

The government seeks civil forfeiture under 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1955(d). Section 1955(d) allows for the forfeiture of "[a]ny property, including money, used in violation of [section 1955]." 18 U.S.C. § 1955(d); see United States v. King, 231 F. Supp. 3d 872, 894 (W.D. Okla. 2017). Section 981(a)(1)(C) allows for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . 'specified unlawful activity.'" 18 U.S.C. § 981(a)(1)(C). A violation of 18 U.S.C. 1955 constitutes "specified unlawful activity." 18 U.S.C. §§ 1956(c)(7)(A), 1961(1).

"A conviction for the underlying offense . . . is not a necessary prerequisite to a civil forfeiture proceeding." United States v. Stewart, 21 F.3d 426, 1994 WL 89803, at *1 n.2 (4th Cir.

5

1994) (per curiam) (unpublished table decision). The government, however, has "the burden of proof . . . to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1).

In order to seek forfeiture under section 1955(d) or section 981(a)(1)(C), the government first must show the claimant violated section 1955. Section 1955 makes it a federal crime to "conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business." United States v. Murray, 928 F.2d 1242, 1245 (1st Cir. 1991); see 18 U.S.C. § 1955(a). An "illegal gambling business" is defined as a gambling business which—

> (i) is a violation of the law of a State or political subdivision in which it is conducted;
> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(b).

As for the five-participant requirement, the statute does not define the degree of participation that is required. See Murray, 928 F.2d at 1245; United States v. Gresko, 632 F.2d 1128, 1132–33 (4th Cir. 1980). The term "conduct," however, has been generally construed to be "any degree of participation in an illegal gambling business except participation as a mere bettor." Sanabria v. United States, 437 U.S. 54, 70–71 n.26 (1978); see Murray, 928 F.2d at 1245; United States v. Merrell, 701 F.2d 53, 54–55 (6th Cir. 1983); United States v. Jenkins, 649 F.2d 273, 275 (4th Cir. 1981); United States v. Greco, 619 F.2d 635, 638–39 (7th Cir. 1980). For example, in United States v. Merrell, the United States Court of Appeals for the Sixth Circuit held that an individual who served coffee to gambling patrons and performed janitorial services qualified as a participant in the gambling operation because the individual performed a service that was "helpful in operating the

enterprise." Merrell, 701 F.2d at 54–55 (emphasis in original); see also United States v. Follin, 979 F.2d 369, 372–73 (5th Cir. 1992); United States v. Hammond, 821 F.2d 473, 475–77 (8th Cir. 1987).[1] Furthermore, "the government need not show that the same five participants were involved in the business for all thirty days; however, there must be evidence that the business involved at least five people at all times for thirty days." United States v. Parker, 790 F.3d 550, 554 (4th Cir. 2015) (alteration and quotation omitted); see Gresko, 632 F.2d at 1133. Thus, the five-participant requirement is met if any five persons were involved at all times over any thirty-day period, or on any single day in which gross revenues exceed $2,000. See id.

In order for an individual to be counted towards the five-participant requirement, the individual must be subject to a conviction under section 1955, but the participant does not need to be charged or convicted. See Boss, 671 F.2d at 400–01. Moreover, although section 1955 does not require specific intent, the government must show that a participant "knew that his or her act was one of participation in gambling." United States v. O'Brien, 131 F.3d 1428, 1430 (10th Cir. 1997); cf. United States v. Lawson, 677 F.3d 629, 652–53 & n.32 (4th Cir. 2012).

The parties dispute whether the five-participant requirement is met, and dispute forfeitability. The government contends the following individuals qualify as participants (in addition to the claimant): Karen Rene Heath, Sonia Erazo, Devon Leon Koonce, and Jonathan Sutton. See [D.E. 20-1] 15. Jonathan Sutton, through his company, Sutton Amusement GMD, LLC, supplied Smith with an ATM machine that Smith had in his residence and that the government seized during the

---

[1] The United States Court of Appeals for the Tenth Circuit, however, has held that "some function necessary to the gambling operation is required and that activity which may be merely helpful to an illegal gambling business does not make the actor a conductor of the illegal business." United States v. Boss, 671 F.2d 396, 400 (10th Cir. 1982) (emphasis added). Other courts have rejected this approach. See Merrell, 701 F.2d at 55 (collecting cases).

7

search of Smith's residence. See [D.E. 35-1]. There is a genuine dispute of material fact concerning whether Sutton qualifies as a participant in the illegal gambling operation by leasing the ATM machine to Smith for use in his residence. Sutton testified that one of his employees installed the ATM machine at the Smith's residence. See id. Sutton also testified that although the ATM machine was installed in a room that also contained VGMs, he lacked any personal knowledge of the VGMs or their use. See id. Although Sutton denies personal knowledge concerning the VGMs, there is a genuine issue of material fact concerning whether his knowledge of the ATM's placement in the same room as the VGMs in a residence is sufficient to show he knew that he was participating in a gambling operation. Moreover, there is a genuine issue of material fact concerning whether leasing the ATM was helpful to the gambling operation. See, e.g., Merrell, 701 F.2d at 54–55. Finally, a genuine issue of material fact exists concerning whether the currency is forfeitable and whether the forfeiture would violate the proportionality standards of 18 U.S.C. § 983(g) and the Eighth Amendment.

IV.

In sum, the court GRANTS the government's motion to amend [D.E. 16] and DENIES the cross-motions for summary judgment [D.E. 17, 23]. The court will hold a bench trial concerning this case. The court anticipates the trial lasting approximately one to two days. The parties shall confer and discuss available trial dates in August, September, or October.

SO ORDERED. This _8_ day of May 2018.

JAMES C. DEVER III
Chief United States District Judge